**Theodore Alan DONALDSON, Petitioner–Appellant,**

**v.**

**UNITED STATES of America, Respondent–Appellee.**

**No. 00–1642.**

United States Court of Appeals, Sixth Circuit.

Dec. 14, 2001.

Before KEITH and COLE, Circuit Judges; MARBLEY, District Judge.*

## OPINION

COLE, Circuit Judge.

Petitioner–Appellant Theodore Alan Donaldson appeals his new sentence after the district court vacated his original sentence under 28 U.S.C. § 2255.[1] Donaldson claims that the district court erred when it enhanced his sentence for possession of a firearm under the U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(1) (1998). He also argues that the district court erred when it used crack rather than powder cocaine to calculate his base level under U.S.S.G. § 2D1.1(c).

Because we find sufficient evidence in the record to support the sentence, we AFFIRM the judgment of the district court.

## BACKGROUND

On January 8, 1991, Alcohol Tobacco and Firearm ("ATF") agent Stan Brue made an undercover purchase of cocaine from Donaldson in Detroit, Michigan. At trial, Brue testified that he expressed an interest in purchasing "one quarter ounce of crack cocaine, cocaine base, rock cocaine" from Donaldson. Brue received two baggies containing crack. After the transaction, Brue asked Donaldson if he would be interested in coming to work at Brue's "crack house." Brue also wanted to know if Donaldson had a firearm he could bring to protect the new operation. Donaldson responded he had a firearm, but it would be "bad for business" if it left the house.

Agents executed a search warrant at the home shortly after Brue concluded his undercover investigation. On the living room coffee table, agents found the cash Brue used to buy the cocaine and Donaldson's driver's registration. Agents also found approximately ninety-eight grams of cocaine on the kitchen table and a loaded revolver in the back bedroom. Donaldson admitted to the agents that the cocaine and firearm belonged to him.

On January 22, 1991, Donaldson was indicted on two counts of narcotics distribution (18 U.S.C. § 841(a)(1)), one count of being a felon in possession of a firearm (18 U.S.C. § 922(g)), and one count of using and carrying a firearm during a drug trafficking offense (18 U.S.C. § 924(c)). Following his guilty plea to one count of drug distribution, Donaldson proceeded to trial and was found guilty on the remaining counts. On August 7, 1991, the district court sentenced Donaldson to 236 months imprisonment on the drug distribution and felon in possession counts and to a consecutive term of sixty months imprisonment for using a firearm during a drug trafficking offense. On April 2, 1997, Donaldson filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. On January 13, 2000, the court granted his motion in part by vacating Donaldson's § 924(c) conviction in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). On May 11, 2000, Judge Rosen resentenced Donaldson to 250 months on the two drug counts and to a concurrent term of 120 months on the felon in possession charge. He determined the two-point enhancement of § 2D1.1 for weapons possession applied, but granted

---

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1. Although this case is captioned as a *habeas* motion pursuant to 28 U.S.C. § 2255, it is more appropriately characterized as a direct appeal from sentence for the reasons discussed in herein. *See* note 2, *infra*.

Donaldson a twelve-month downward departure for post-conviction rehabilitation. The new calculation reduced Donaldson's sentence by forty-six months. Donaldson filed an appeal on May 26, 2000.[2] Because of an error, the court issued a final judgment on November 22, 2000.

## DISCUSSION

### POSSESSION OF A FIREARM

■ Section 2D1.1(b)(1) of the Sentencing Guidelines allows the sentencing court to impose a two-level enhancement to a defendant's base offense level if the court finds the defendant possessed a firearm in connection with the offense. Whether a defendant possessed a firearm under U.S.S.G. § 2D1.1(b)(1) is a factual finding that we review for clear error. *See United States v. Owusu*, 199 F.3d 329, 347 (6th Cir.2000).

■ The commentary to § 2D1.1(b)(1) states that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n. 3. For the two-level enhancement to apply, the government must establish 1) the defendant actually or constructively possessed the weapon, and 2) such possession was during the commission of the offense. *See United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991). Constructive possession is established if the defendant had "ownership, or dominion, or control over

the [firearm] itself, or dominion over the premises where the [firearm] is located." *Id.* (internal quotations omitted). Once the government establishes possession, "a presumption arises that such possession was connected to the offense," and the burden shifts to the defendant to show that "it is clearly improbable that the weapon was connected to the offense." *Id.* In determining whether a defendant meets this burden, we consider factors including the proximity of the gun to the drugs, the type of gun used, whether the gun was loaded, and any alternative purpose offered to explain the gun's presence. *See United States v. Hill*, 79 F.3d 1477, 1486 (6th Cir.1996).

■ The government clearly satisfied its initial burden by demonstrating Donaldson constructively possessed the gun: Donaldson told authorities that the gun was his own. The government also presented persuasive evidence that the gun was used in connection with drug trafficking: The house was used for little more than a crack dealing operation; Donaldson told the agent that removing the gun from the house would be "bad for business," and the gun was located somewhere in the back bedroom.[3] In response, Donaldson points out that the gun was not near his person or the drugs, but located in another room. He claims his "bad for business" statement was an expression of reluctance to join a gun-toting drug operation, not an admission the gun was used to protect the crack house.

---

**2.** Donaldson mistakenly filed duplicate appeals, one styled as an appeal from sentence and the other construed as an application for a certificate of appealability under § 2255. *See Donaldson v. United States*, Nos. 00–1642 & 00–1644 (6th Cir. Sept. 27, 2000) (dismissing No. 00–1644 as a duplicate appeal). To the extent that the present appeal has been interpreted by the court as an application for a certificate of appealability, that application

has been denied. *Donaldson v. United States*, No. 00–1642 (6th Cir. Dec. 7, 2000). Therefore, the remaining issues in this case arise as a direct appeal from the new sentence.

**3.** The exact location of the firearm in the bedroom is unclear from the record. In this particular case, it has no bearing on our disposition of the issue.

Although we have found that a gun located within inches of contraband narcotics does not require enhancement of a sentence, *see United States v. Peters,* 15 F.3d 540, 542 (6th Cir.1994) (finding no error when the district court declined to enhance the sentence for a handgun found in a drawer below a baggie of crack), this does not suggest that the proximity alone determines the propriety of the enhancement. *See United States v. Chalkias,* 971 F.2d 1206, 1217 (6th Cir.1992) (upholding the enhancement where an unloaded Mac–10 submachine gun was found in a box in the basement rafters of a dwelling where drugs were stored). Donaldson's "bad for business" statement could be interpreted as an expression of reluctance to join a gun-toting gang, but it could just as easily be interpreted as an expression of reluctance to compromise protection of his crack house. Having admitted that the drugs and the weapon in the house were his, Donaldson was obliged to show that it was "clearly improbable that the weapon was connected to the offense." Neither the proximity of the gun nor Donaldson's ambiguous statement show it was "clearly improbable" that the gun was connected to the drug dealing.

The application of the enhancement was not in error.

### 16. COCAINE BASE V. CRACK [4]

"Whether a drug is crack or another form of cocaine base is a question of fact for the sentencing court to determine, which we review for clear error." *Owusu,* 199 F.3d at 339. The government has the burden of showing by a preponderance of the evidence that the substance was crack as defined in the Guidelines. *Id.*

■ Donaldson argues that the government failed to show that the drug in this case was in fact crack and not some type of non-crack cocaine base. In particular, he points out that the government did not show that the substance was "prepared by processing cocaine hydrochloride and sodium bicarbonate." Appellant's Brief at 16. This argument is misguided. The Guidelines only say that crack is *usually* prepared using sodium bicarbonate. U.S.S.G. § 2D1.1(c) n.(D). As we held in *Owusu,* "the use of sodium bicarbonate is not a necessary prerequisite for a district court's factual determination that a particular drug is 'crack.'" *Owusu,* 199 F.3d at 340. The record clearly indicates that the drug was crack cocaine. The parties stipulated in 1991 that the substance was cocaine base. Donaldson's attorney stated that his argument "does not rest on whether [the base] is crack or not, so we concede that." Donaldson admitted in open court that he sold "crack cocaine" to the ATF agent. In *Owusu,* this court held that lay testimony from police, and a "lumpy hard appearance" of the base, can be evidence that the cocaine is crack. *Id.* at 340; *see also Wright v. United States,* 182 F.3d 458, 468 (6th Cir.1999). Agent Brue testified that he received crack cocaine. Laboratory reports admitted into evidence described the substance as an "off-white lumpy material."

---

**4.** The government argues that Donaldson is barred from raising this issue because this court denied Donaldson's application for a § 2255 certificate of appealability. However, as we stated in footnote 2, *supra,* the issues presented in this case arise as an appeal from sentence, not as a *habeas* motion under § 2255. We thus have jurisdiction to hear this issue on appeal. 18 U.S.C. § 3742; 28 U.S.C. § 1291.

As to the government's other objections to our hearing this issue, because they are nonjurisdictional, and because we find sufficient evidence in the record to affirm the district court notwithstanding, we need not address them.

In short, there was sufficient evidence for the district court to sentence Donaldson based on the crack guidelines.

### CONCLUSION

For the foregoing reasons, the district court judgment is AFFIRMED.

Before KENNEDY, MOORE, and COLE, Circuit Judges.